United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JESUS GONZALEZ-AVINA, a/k/a Jesus Gonzalez,<br><br>    Defendant. | No. CR 06-00004 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Motion to Dismiss** |

Defendant Jesus Gonzalez-Avina was indicted on December 21, 2005 for illegal entry into the United States, in violation of 8 U.S.C. section 1326. Now before the court is defendant's motion to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. section 3161(b), and the Speedy Trial Clause of the Sixth Amendment. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

Defendant began serving a three-year state prison sentence arising out of a conviction for lewd acts involving a child on April 16, 2003. On July 18, 2003, while in state custody at San Quentin state prison, defendant was interviewed by Alex S. Chan, a federal immigration agent. Following the interview, on September 16, 2003 Agent Chan obtained evidence that defendant had

1

previously been deported and had reentered the United States unlawfully. On April 29, 2004 Agent Chan swore out a complaint against defendant for violation of 8 U.S.C. section 1326 and filed the complaint with Magistrate Judge Chen of this district. Defendant was not notified of the complaint or transferred to federal custody, but was permitted to complete his state sentence.

On December 20, 2005 defendant was released from state custody and arrested by federal agents. He was indicted the following day. Defendant argues that the 20-month delay between the complaint and his arrest and indictment violates the Speedy Trial Act, 18 U.S.C. section 3161(b), and that the still-growing delay between the complaint and trial violates the Speedy Trial Clause of the Sixth Amendment to the United States Constitution.

LEGAL STANDARD

I.   Speedy Trial Act

Under the Speedy Trial Act (the "Act"), "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The Act requires that: "[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). If the time period is violated, "[t]he statute leaves no discretion whether to dismiss the charge in the complaint. Dismissal is mandatory. The court does however retain discretion whether that dismissal shall be with or without prejudice according to the application of the statutory factors." United States v. Antonio, 705 F.2d 1483, 1486 (9th Cir. 1983).

II.  Speedy Trial Clause of the Sixth Amendment

A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment to the Constitution. Klopfer v. North Carolina, 386 U.S. 213, 222–23 (1967). No *per se* rule has been devised to determine whether the right to a speedy trial has been violated. Instead, courts must

2

apply a flexible "functional analysis" and weigh the following factors in evaluating a Sixth Amendment speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. at 530.

Although all of the factors must be considered together with such other circumstances as may be relevant, see Barker v. Wingo, 407 U.S. 514, 522, 533 (1972), the length of the delay is a "threshold issue." Doggett v. United States, 505 U.S. 647, 651–52 (1992); United States v. Gregory, 322 F.3d 1157, 1161 (9th Cir. 2002). Defendant must show "that the period between indictment and trial passes a threshold point of 'presumptive prejudicial' delay" before a court may proceed to consider the other factors. Id. Delays approaching one year are presumably prejudicial, while a delay of six months is a "borderline case." Id. at 1162 & n.3.

The degree of actual prejudice which must be shown depends on the length of the delay and the level of government culpability. Where the delay is not significantly greater than the one-year threshold for presumptive prejudice, and the government was merely negligent, the defendant must put forth evidence of actual prejudice. Id. at 1162–63. Where the delay is "great and attributable to the government," no actual prejudice must be shown. Id. A defendant may typically demonstrate three types of actual prejudice: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." Id. at 1163.

DISCUSSION

I.   Speedy Trial Act

The parties disagree as to whether the Speedy Trial Act is applicable to defendant, as defendant was *arrested* on December 20, 2005—just one day before his indictment. Cf. 18 U.S.C. § 3161(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was *arrested or served with a summons* in connection with such charges") (emphasis added). Defendant does not dispute that the event which usually triggers the 30-day period for filing an indictment is arrest by federal officers. Instead, defendant argues that the filing of the criminal complaint on April 29, 2004 triggered the Act in this case because it "officially charged [and] accused" defendant of the

3

immigration violation. Cf. United States v. Benitez, 34 F.3d 1489, 1493 (9th Cir. 1994), cert. denied, 513 U.S. 1197 (1995) (holding that "[a]n individual who is not officially charged with a federal offense or 'accused' has not been arrested for the purposes of § 3161(b).").

The government argues in response that the filing of a complaint does not trigger the Act, citing United States v. Shahryar, 719 F.2d 1522 (11th Cir. 1983). The facts in Shahryar are nearly identical to those in this case: a federal complaint was lodged against the defendant while he was in state custody, and the federal arrest took place immediately upon his release. Id. at 1524. The court rejected the argument that the filing of the complaint was an "arrest," finding that a person must be "held for the purpose of answering to a federal charge" in order to trigger the protections of the Speedy Trial Act. Id. at 1524–25.

Defendant asks the court to disregard Sharhyar because it is not binding and was decided over twenty years ago. The statute, however, is clear: an "arrest" triggers the 30-day window for filing an indictment. The passage from Benitez cited by defendant is not helpful, as the court in that case did not consider whether a federal complaint might trigger the Act. The court therefore concludes that the filing of a federal complaint, without more, does not qualify as an "arrest" under the Speedy Trial Act.

Defendant argues, in the alternative, that actions other than an arrest may trigger the Speedy Trial Act where "federal criminal authorities [arrange] with state authorities to have the state authorities detain a defendant until federal authorities are ready to file criminal charges." Benitez, 34 F.3d at 1494. In Benitez, the defendants were arrested as part of a federal drug sting involving undercover federal agents. Id. at 1492. At the conclusion of the sting, however, the defendants were arrested by state rather than federal officials, and were held based on state charges. Id. The state arrest report and criminal complaint did not use the true names of the federal agents involved in the sting, in order to preserve their undercover status. Id. The federal prosecutors refused to allow the federal undercover agents to testify at the state preliminary hearing, also based on the need to preserve the agents' undercover status. Id.

During the period of state custody, federal prosecutors engaged in several conversations with the state prosecutors about whether federal charges would eventually be filed. Id. at 1494. When

4

1  the undercover operation terminated, the federal prosecutors informed the state of their intent to seek
2  indictments against the defendants, and the state released the defendants into federal custody. Id. at
3  1492–93. The court found that although the question was "very close," defendants failed to show
4  that the state detentions were a "ruse" designed to keep the defendants in custody until the federal
5  prosecution was ripe to proceed. Id. at 1494–95.
6         Here, defendant does not contend that the federal government took any affirmative steps to
7  keep defendant in state custody until a federal indictment could be obtained. Instead, defendant
8  seemingly asks for an extension of the rule in Benitez to encompass an intentional failure to act;
9  defendant claims that federal prosecutors deliberately allowed the state sentence to run its course in
10 order to prevent the state and federal sentences from running concurrently.
11        Even if defendant were correct in asserting that the "ruse" exception set forth in Benitez
12 encompasses intentional failures to act, defendant's allegations do not support a finding that the
13 government deliberately kept defendant in state custody in this case. Defendant offers only two
14 facts in support of his contention that the delay was intentional. First, defendant argues that the
15 government had no justification for the delay between the complaint and the indictment in this case,
16 and that based on the lack of justification, an intent to delay may be presumed. Lack of justification,
17 while it may suggest negligence or recklessness, is not sufficient on its own to support a reasonable
18 inference of actual intent. Second, defendant argues that there is a longstanding "practice" in this
19 district of deliberately delaying the filing of federal charges against illegal aliens in state custody,
20 citing a Ninth Circuit decision from 1998, United States v. Sanchez-Rodriguez, 161 F.3d 556 (9th
21 Cir. 1998) (en banc). The Sanchez-Rodriguez court, however, did not suggest that the government's
22 conduct was intentional, but found only that "[t]he Probation Office determined that
23 Sanchez-Rodriguez would have been able to serve ten more months of his state term concurrently
24 with his federal term had he been indicted and sentenced in a more timely fashion." Id. at 563 n.13.
25 Defendant's proffer of a single past instance of allowing a state sentence to run its course is not
26 sufficient to establish that the government acted deliberately in this case.[2] The evidence of intent
27 rejected as insufficient in Benitez is far more detailed: state involvement in a federal sting, actual
28 cooperation between state and federal authorities in protecting the identities of federal agents, and

5

1  repeated discussions between state and federal prosecutors prior to the federal indictment.
2  Defendant has not established that his state detention in this case was the result of a federal
3  government "ruse."  He is thus not entitled to relief under the Speedy Trial Act.

II.     Speedy Trial Clause

As a threshold matter, the parties disagree as to the relevant time period for evaluating defendant's Sixth Amendment claim.  Defendant argues that the Sixth Amendment right to a speedy trial attached on April 29, 2004 when Agent Chan filed the Complaint.  The government argues that no right to a speedy trial attached until the indictment was filed on December 21, 2005.  Both parties cite Ninth Circuit opinions in support of their positions.

Ninth Circuit law considering when the speedy trial right attaches is indeed somewhat confused.  Defendant cites three cases which clearly state that the speedy trial right attaches when a criminal complaint is filed.[3]  United States v. Terrack, 515 F.2d 558, 559 (9th Cir. 1975) ("the filing of a criminal complaint, or the indictment where there is no complaint, marks the inception of the speedy trial guarantee of the Sixth Amendment."); Northern v. United States, 455 F.2d 427, 429 (9th Cir. 1972) ("This court has consistently held that the date of the filing of a criminal complaint . . . marks the inception of the speedy trial guarantee of the Sixth Amendment."); Benson v. United States, 402 F.2d 576, 579 (9th Cir. 1968) ("We have held that the right to a speedy trial guaranteed by the Sixth Amendment does not arise until a formal complaint is lodged against the defendant.").

The government cites two cases which clearly state that the filing of a criminal complaint does not trigger the Sixth Amendment speedy trial right.[4]  Arnold v. McCarthy, 566 F.2d 1377, 1382 (9th Cir. 1978) (holding that the defendant was not "accused" within the meaning of the Sixth Amendment prior to the indictment, notwithstanding the fact that a criminal complaint had been filed and that defendant had been in state custody); Favors v. Eyman, 466 F.2d 1325, 1327–28 (9th Cir. 1972) ("We conclude that the rationale of [United States v.] Marion[, 404 U.S. 307 (1971)] requires that we hold that Favors' Sixth Amendment right to a speedy trial did not attach when the complaint was filed.").

6

None of the cited cases attempts to reconcile its holding with the conflicting line of precedent. Indeed, only Terrack acknowledges (but does not discuss) the conflicting authority. Terrack, 515 F.2d at 559 (citing Favors and Griffin). Defendant argues that the court should follow the older cases because panel decisions of the Ninth Circuit are controlling until overruled by the en banc court or the Supreme Court. See Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court."). The government has not offered any persuasive reason to depart from this rule.

The court therefore concludes that the length of the delay in this case is currently 22 months—the time between the filing of the complaint on April 29, 2004 and the hearing for this motion on February 27, 2006. The actual delay will be greater, as the trial date is not yet set. See Gregory, 322 F.2d at 1162 (finding that the relevant period of time is measured from the date of the charging document to the date of the trial). A delay of nearly two years is clearly sufficient to satisfy the threshold requirement of presumptive prejudice. The court will therefore proceed to consider the Barker factors.

### A. Length of the Delay

The length of delay in this case—22 months—is already nearly double the one-year presumptive threshold. By the time of trial, it is very likely that more than two years will have elapsed.

The government argues that delays in the range of 20 to 22 months are not significant enough to relieve defendant of the burden of demonstrating actual prejudice, citing United States v. Beamon, 992 F.2d 1009, 1014 (9th Cir. 1993) and Gregory, 322 F.2d at 1162. In Beamon, the Ninth Circuit found that "[s]eventeen and 20 months are only five to eight months longer than the one year benchmark. . . . This is not close to the delay of eight times the one year benchmark in Doggett, or to the delay of five times that point in Shell." Beamon, 992 F.2d at 1014. Similarly, in Gregory, the Ninth Circuit found that a delay of 22 months is not "excessively long," and required defendant to show actual prejudice in order establish a Sixth Amendment violation. Gregory, 322 F.3d at 1163.

7

1    The delay in this case is somewhat longer than the delays in <u>Beamon</u> and <u>Gregory</u>.
Nonetheless, a delay of two years is still significantly shorter than the five- and eight-year delays
that the <u>Beamon</u> court found to be "great." <u>Beamon</u>, 992 F.2d at 1014. The court therefore
concludes that defendant must demonstrate some actual prejudice in order to establish a violation of
the Sixth Amendment, though less than that required in <u>Beamon</u> or <u>Gregory</u>. Overall, the length of
the delay weighs in defendant's favor.

B.    <u>Responsibility for Delay</u>

The government does not contend that defendant bears any responsibility for the delay.
Moreover, the government has offered no reasonable justification for its delay, such as the inability
to locate defendant, <u>cf.</u> <u>Beamon</u>, 992 F.2d at 1012 (government was required to search for
defendants, who were not already in custody). As already discussed, while the facts surrounding the
delay do not support a reasonable inference that the government acted deliberately, the lack of any
justification for the delay suggests negligence at a minimum, and possibly gross negligence or
recklessness. This factor also weighs in defendant's favor.

C.    <u>Assertion of Right to a Speedy Trial</u>

The government also does not dispute that defendant promptly asserted his right to a speedy
trial, but claims that this factor "weighs neither for nor against [defendant]." <u>Gregory</u>, 322 F.3d at
1162. As the <u>Gregory</u> court noted, however, two earlier Ninth Circuit panels concluded that "the
prompt assertion of a speedy trial right weighs, at least slightly, in the defendant's favor." <u>Id.</u> at
1162 n.4. The two earlier panel opinions are controlling, and the court finds that the third factor
weighs slightly in defendant's favor.

D.    <u>Prejudice</u>

Defendant argues that he has been prejudiced by his inability to have his state sentence run
concurrently with whatever federal sentence he receives in connection with the charged immigration
law violation. The Ninth Circuit held in <u>Gregory</u>, however, that "any sentencing prejudice that

8

1  [defendant] might suffer is speculative rather than actual," and thus not an adequate basis for
2  establishing a violation of the Sixth Amendment. Id. at 1164. This is so, reasoned the Ninth Circuit,
3  because of "the district court's ability to depart downward" in order to compensate for the
4  government's failure to diligently pursue its case. Id.

In this case, moreover, defendant's state law sentence was for a violation wholly unrelated to the alleged federal offense. Based on the current record, the court would not have been inclined to order that the state sentence for lewd acts involving a minor run concurrently with the federal sentence for illegal entry into the United States. Thus, defendant has suffered no actual prejudice.

Pared down to its essentials, defendant's claim is based entirely on the fact that the government filed a complaint and failed to promptly obtain a transfer of defendant into federal custody. Nothing about the delay has prejudiced defendant in his ability to present his defense in this case. Nor was defendant subjected to additional confinement or anxiety, as he was already in state custody and had no knowledge of the federal complaint. Based on the absolute lack of actual prejudice, and the absence of either egregious delay or intentional government misconduct, defendant's motion to dismiss must be denied.

CONCLUSION

For the above reasons the court hereby DENIES defendant's motion to dismiss the indictment.

IT IS SO ORDERED.

Date: March 10, 2006

MARILYN HALL PATEL
United States District Judge
Northern District of California

9

ENDNOTES

1. Unless otherwise noted, facts are taken from the criminal complaint ("Complaint") and are not disputed for purposes of the instant motion.

2. Defendant requests, in the alternative, an evidentiary hearing on the question of whether the government intentionally delayed in filing the indictment in this case. Defendant's current allegations, however, do not raise even a reasonable suspicion that the government's delay was intentional. A hearing is therefore inappropriate.

3. The fourth decision cited by defendant, Venus v. United States, 287 F.2d 304 (9th Cir. 1960), rev'd on other grounds, 368 U.S. 345 (1961), does not appear to address directly the issue of when the right to a speedy trial actually attaches.

4. The other two cases cited by the government, United States v. Pace, 833 F.2d 1307 (9th Cir. 1987), cert. denied, 486 U.S. 1011 (1988) and United States v. Griffin, 464 F.2d 1352 (9th Cir.), cert. denied, 409 U.S. 1009 (1972) are not directly on point. In Pace, the court considered the point in time at which the Sixth Amendment right to counsel attaches, and not the right to a speedy trial. Pace, 833 F.2d at 1312. In Griffin, there was no complaint. Griffin, 464 F.2d at 1354.